## Martin for use, Appellant, *v.* Kline et al.

*Issue to determine validity of judgment—Practice.*

Where an issue is framed to determine the validity of a judgment, and several questions are to be determined by the issue, it is the better practice to incorporate the several questions in the order of the court, and to require them to be answered separately by the jury in their verdict.

*Evidence—Depositions—General objection to admission.*

Where portions of deposition are competent, the admission of the whole deposition over a general objection is not error.

*Evidence—Declarations—Fraud—Sale of land.*

In an action on a promissory note given in payment for lands sold by the payee to the maker, where the maker claims that he was induced to buy the lands by fraudulent representations, a written statement made by the vendor at the time of the sale as to the value and character of the land, is admissible in evidence.

*Promissory note—Alteration—Judgment note.*

On an issue to determine the validity of a judgment note, where both parties acknowledge that the rate of the attorney's commission was inserted after the delivery of the note, the question as to who made the alterations is for the jury.

157   473
180   167

157        473
d 19 SC ²476

157        473
217        ³526

157        473
f220       ³292

157   473
41SC²339

Argued May 23, 1893.    Appeal, No. 147, Jan. T., 1893, by plaintiff, Adam H. Martin, for use of Dr. J. F. Thompson, from judgment of C. P. Perry Co., Aug. T., 1889, No. 168, on verdict for defendants, John L. Kline and George L. Kline. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Issue to determine validity of judgment.    Before LYONS, P. J.

The note, by order of court, was to stand for plaintiff's statement.    Defendant pleaded payment and payment with leave.

At the trial it appeared that the judgment in question had been entered on a judgment note given by defendants to Adam H. Martin in payment for a tract of land in Kentucky.    Defendants claimed that they were induced to purchase the land by false representations of which the use plaintiff had knowledge.

Defendants' counsel offered to prove by John L. Kline, the facts and occurrences that induced him to give the note in suit, what the said note was given for and the representations made by the payee in the said note that induced the same to be given. Counsel for the plaintiff: At what time do you propose to offer the declarations?    Defendants' counsel: All declarations and facts made prior to the giving of the note.    Plaintiff's counsel objects: That any declarations or agreements that were entered into or made prior to the consummation of these negotiations were merged by the giving of the deed, accepting the deed and giving of the note, and are not admissible as evidence.    Objections overruled, evidence admitted and exception. [2]

The witness testified that Adam H. Martin, the payee in the note, promised, upon the purchase of the land, that he would execute to him a separate article of agreement, setting forth the representations specially made.

Defendants then offered in evidence the written agreement signed by Adam H. Martin in accordance with that agreement. Plaintiff's counsel objected: That the witness has just testified that the agreement was made out on Monday, the 12th, but that the note was not signed until Tuesday, the 13th; that the agreement was merged, by the making of the deed and giving of the bond and is not admissible as evidence.    By the court: The signing of the note having been done in pursuance of the

agreement of Martin, or promise of Martin, to give a written agreement that the note would not be collected if the land was not as represented, the objections are overruled and evidence admitted. Exception. [3]

The agreement signed and sealed by Adam H. Martin, Nov. 12, 1888, was as follows: " I do hereby make the following representations: That is to say: First, That the land specified in this, John and George Kline's deed, dated November the 7th, 1888, for one thousand acres of land, situate in Johnson county, Kentucky, given by me is worth $5.00 per acre. Second, That the said land is timber land, containing a large amount of timber. Third, That it is all underlaid with coal, both cannel and bituminous; also iron ores of different varieties. If the above representations are false, this note of $900 dated November 12, 1888, given to me for one year, to be void, and also the sale of the said timber tract. This note is the only one I have of John and George Kline, who are the parties above referred to."

Defendants' counsel asked Geo. L. Kline: " Q. When you signed this note what character, if any, was written between the words ' attorney's commission of ' and the words ' per cent for collection ' in the note? Plaintiff's counsel objected: (1) This note was offered by the plaintiff in evidence and admitted without any objections on the part of the defendants. (2) That the defendants in their examination in chief acknowledged that this note was their obligation. (3) That it is not admissible under the pleadings in this suit. Objections overruled and evidence admitted. [4]

" A. It was what was called a cross. Q. How many lines constituted the mark? A. Two. Q. What were they, what direction did they run? A. Well, it is here, that is about the way they ran. Q. Did one run out and the other run crosswise? A. Yes, sir; and the other up and down."

Defendants' counsel asked Geo. L. Kline: " Q. Will you have the kindness to state how you came to give this note, what it was given for and when the note was actually finally signed and delivered? " Plaintiff's counsel: Do you propose to prove by this witness conversations between him and Mr. Martin prior to the giving of this note? Defendants' counsel: Yes, sir. Objected to, admitted and exception. [5]

The witness then gave in detail the negotiations leading up to the execution of the note.

Defendants offered depositions of certain witnesses in Johnson county, Kentucky, for the general purpose of showing that no such lands existed as those stated in the above agreement. Objected to, objection overruled, depositions admitted and exception. [6]

Defendants' counsel asked John L. Kline : " Q. State what Mr. Martin said to you at the time of the negotiation for their lands, that he could do if you would purchase these lands, with regard to locating and surveying them for you ?" Plaintiff objected : (1) That any conversations or agreements made prior to the time of giving of this note and accepting of the deed are not admissible as evidence. (2) That any declarations or agreements that were made prior to the consummation of these negotiations were merged, by the giving and accepting of the deed and giving of the note, and are not admissible as evidence. (3) The defendants having themselves offered the written agreement of Mr. Martin with regard to this note and to the deed, any other agreement would be merged in the deed and in the written guaranty, and would not be admissible as evidence here. Objection overruled, evidence admitted and exception. [7]

" A. When we bought these lands, as stated before, he stated it would not pay to go down to survey a tract each time he would sell one, he had sold one to Weiser and to Rine, and if we concluded to buy this land, he would set a time in coming May, and in May we would go down and survey the land and he would get possession of it, and, as I said, when May came he was not about."

Defendants' counsel proposed to prove by John L. Kline that he went to Adam H. Martin and asked him to comply with the agreement which he had made, to wit : Have the lands surveyed and located ; that the said Martin refused so to do and said it was impossible for him to do so. Plaintiff's counsel objected : Because the defendants have offered in evidence themselves the written agreement of Mr. Martin in regard to this note and to the deed ; and any other agreement would be merged in the deed and in the written guaranty and would not be admissible as evidence. Objection overruled and exception. [16]

The witness then testified as in the offer.

The charge of the court was as follows :

" The defendants made and executed their single bill, with

warrant of attorney to confess judgment, commonly called a judgment note, bearing date Nov. 12, 1888, payable one year after date, with interest, to the order of Adam H. Martin, for the sum of $900. This note, as it appears from an assignment on the back thereof, was transferred by Adam H. Martin to Dr. J. F. Thompson, the use plaintiff, on the day following its date. On this note a judgment was entered in the court of common pleas of Perry county on the 15th day of November, 1889, to No. 168, August term, 1889. Subsequently an execution was issued on said note and placed in the hands of the sheriff, who proceeded to levy, whereupon the defendants petitioned the court to open the judgment and let them in to a defence, and the court ordered an issue framed to try the matters of dispute between the parties.

" The defendants allege that the note in question was given for the purchase money of a tract of land, situate in Johnson county, Kentucky, said to contain one thousand acres, and this the plaintiff admits. The defendants claim, however, that they gave this note upon the condition that if the land was not as represented to them by Adam H. Martin, who is the legal plaintiff in this issue, that they were not to pay the note; and they further allege that no such tract of land as was conveyed by Adam H. Martin to them can be found in Johnson county, Kentucky, and the title of Martin, which he conveyed to them, was of no value. [Now, gentlemen, this is the question for you to determine : Did Adam H. Martin own a tract of land in Johnson county, Kentucky, such as is described in his deed of conveyance to John L. Kline and George L. Kline, and was it capable of identification and location? But your verdict will not depend upon this fact alone, as we will subsequently instruct you. You have heard the evidence on this question. John L. Kline testified to going down to Johnson county, Kentucky, and as to what he did to locate this land. You have heard the depositions of George C. Perry, J. K. Dickson, and J. W. Walker, residents of Johnson county, Kentucky, read in your hearing. On the part of the plaintiff you have heard the testimony of A. H. Martin, and that of J. K. Blattenberger, who testified that John L. Kline told him after he returned from Kentucky that he had seen the land and it was worth $10.00 an acre. You will carefully consider all this testimony on the one side and the

other, giving to the testimony of each witness the weight that you think it is entitled to, and you will consider any other evidence there may be in the case touching this question.  If you find that the land described in the deed from Martin to Kline did exist in Johnson county, Kentucky, and was capable of being identified and located as represented by Martin and as he agreed it should be, then your verdict should be for the plaintiff.  But if you find from this evidence that such was not the case then your verdict should be for the defendants,] [17] unless you further find that John L. Kline and George L. Kline, or either of them, induced Dr. J. F. Thompson to buy the said note from the said Adam H. Martin.

" Dr. Thompson alleges that he would not have purchased the said note had not Mr. John L. Kline told him that if he gave the note it would be all right, and further whatever his testimony was—I am merely giving you the substance of it. You have heard the testimony of the witness on this point on the one side and the other.  The witnesses, as I recollect them as to this point, are Dr. J. F. Thompson, Adam H. Martin and J. K. Blattenberger on the one side, and John L. Kline on the other side, and other testimony bearing on this point, all of which you will consider, and if you find that Dr. Thompson was induced to buy this note by the Klines, or either of them, then no matter whether there was no such land in existence or not as Martin conveyed to the defendants, the Klines must pay this note and your verdict should be for the plaintiff, unless the said note after it was signed and executed by the said defendants was fraudulently altered to the prejudice of the defendants, and that this alteration was done by the said Adam H. Martin or Dr. J. F. Thompson, or some one else by their procurement. [If it was so altered that would render the note void and the plaintiff could not recover.  You have heard all the testimony on this point: Martin, Thompson and Blattenberger all testified that the figure 4 was not in said note at the time of the first taking of the testimony on the rule to open the judgment; when that was, I do not recollect, you may be able to fix that date.  Jacob L. Markel and E. U. Aumiller say that it was there at that time.  There were also other witnesses called in relation to this point and I will call your attention to the record which says that this note was filed, for the purpose of en-

tering judgment on it, on the 15th day of November, 1889.   It
was placed in the hands of the prothonotary, who entered it
upon the docket and who made the entry upon the docket with
the 4 per cent attorney's commission in it.   Now from this
evidence you will determine, and from all the evidence in the
case, when this alteration was made and by whom it was made.
The Klines testify that there was a cross made there when
they executed the note and delivered it to Martin—whether
that was put in by Martin or by Dr. Thompson, or by some one
else by their procurement, for they have not shown that the
note was ever in the hands of anybody else until Dr. Thompson
sent it to his attorney, Mr. Sponsler, who handed it to the pro-
thonotary and placed it on record.   Who made that alteration,
if it was made at that time? ] [18]   Both parties admit and
both parties testify that the note is not in the condition now
that it was when executed by the Klines and delivered to
Martin.   There is no dispute about that ; it is admitted upon
all hands that somebody altered this note.   Now who did it?
The plaintiff alleges that somebody subsequent to the time that
the depositions were taken, for the purpose of making the note
void and preventing a recovery on it by Dr. Thompson, made
this alteration.   They allege that that was the motive for doing
it.   [Mr. Markel testifies that on the day the depositions were
taken he saw the 4 there and gives as the reason for his recol-
lection being clear about it, that it was unusual for that per
cent to be put in and was accustomed to putting 5 per cent
in and he told Mr. Kline of its being there, and he said there
was no such thing there.   Now we leave it for you to deter-
mine who made that alteration.   What was the motive for it
and who did it? ] [18]   From all the evidence in the case on
the one side and the other you will determine this question.
If you find that it was altered by Martin, Thompson, or by any
one at their instance, then I instruct you that the plaintiff can-
not recover.   It is for you to say by whom this was made.
There must have been some motive for its being altered.   You
will recollect that both plaintiff and defendants admit that the
note was altered and it is apparent on the face of the note
itself.   Take into consideration, in determining this question,
the character and credibility of the witnesses, and what the
motive was in making this alteration.   The plaintiff claims

that it was done by some one in the interest of the defendant, and not done until after the meeting at Shull's office, and for the purpose of using that as a defence to the payment of the note. I submit this question to you to find, and if you find that the note was altered by Adam H. Martin or J. F. Thompson, or by either of them, or any other person at their instance and request, it is such a material alteration as would avoid the note, for the law says, that if any person alters or changes a note, to the prejudice of the maker of the note, that he shall recover no part of it and thus punishes him for the attempted fraud by not permitting him to recover anything on the note thus altered, not even the amount honestly due.

" [You will take into consideration, in connection with these questions, the surrounding circumstances as detailed by the witnesses as to whether or not there was a mutual interest on the part of Dr. Thompson, Adam H. Martin and John K. Blattenberger in this case. Mr. Blattenberger took a good deal of interest in the case, and if you believe that the declarations which he made to the jurors, whom he interviewed, that his interest in the case was a pecuniary one, then it would tend to show that the parties perhaps understood the manner in which the note was obtained. That is entirely a question for you, however. You will recollect the testimony of Mr. Barner and the testimony of Mr. Long, and perhaps other witnesses in the case, which tended to bring these parties together. You will take all these facts into consideration in making up your judgment.] [19] The credibility of the witnesses is entirely for you. You will determine what weight you will give to their testimony. Take into account their appearance upon the witness stand, their manner, their apparent bias or the absence of it, the manifestation of their feelings, whether they were true or not, and in your own way determine where the truth lies, and render such a verdict as will do justice between these parties under the instructions we have given you. If you find for the plaintiff you will find in his favor the sum of $900, with interest from November 12, 1888, to this date, which, by a calculation I have made, amounts in the aggregate to $1,117.80. In that calculation I did not include one day's interest. However, if you determine these questions in favor of the defendants you will render a verdict generally for the defendants."

Verdict and judgment for defendants.   Plaintiff appealed.

*Errors assigned* were among others (2–7, 16) admission of evidence; (17–19) instructions; quoting bills of exceptions, evidence and instructions; (20) in omitting to charge on plaintiff's evidence; (21) the charge as a whole was misleading.

*W. H. Woods, W. A. Sponsler* with him, for appellant, cited: Ludwick v. Huntzinger, 5 W. & S. 51; Beeson v. Brownfield, 1 Penny. 468; Crawford v. Murphy, 22 Pa. 84; Wilson v. Cochran, 48 Pa. 112; Garrard v. Haddan, 67 Pa. 85; Weigley v. Conrade, 132 Pa. 147; Roenigk's Ap., 2 Cent. 68; Martin v. Berens, 67 Pa. 459; Car Co. v. Lumber Co., 11 W. N. 381; Stull v. Thompson, 154 Pa. 43; Abbott v. Lyon, 4 W. & S. 48; Covely v. Fox, 11 Pa. 174; Smaltz v. Ryan, 111 Pa. 423; Woodburn v. Farmers' & Mechanics' Bank, 5 W. & S. 447; Thorne v. Warfflein, 100 Pa. 526; Day v. Osborn, 19 W. N. 443; Herstine v. Lehigh Val. R. R., 151 Pa. 245.

*W. H. Sponsler, J. L. Markel* with him, for appellees, cited: Solts's Ap., 4 W. N. 298; Miller v. Henderson, 10 S. & R. 290; Oliver v. Oliver, 4 Rawle, 141; Zentmyer v. Mittower, 5 Pa. 403; Kostenbader v. Peters, 80 Pa. 438; Hoopes v. Beale, 90 Pa. 82; Rearich v. Swinehart, 11 Pa. 233; Snyder v. Berger, 18 W. N. 490; Heath v. Slocum, 115 Pa. 549; Cover v. Manaway, 115 Pa. 338; Bush v. Monteith, 2 W. N. 112; Phila. v. McCuen, 14 W. N. 453; Sossong v. Rosar, 112 Pa. 201; Dennison v. Leech, 9 Pa. 164; Carson v. Coulter, 2 Grant, 121; Felt's Ap., 1 Mona. 282; Knarr v. Elgren, 19 W. N. 531; Scott's Ap., 123 Pa. 155; Steiner v. Loan Co., 98 Pa. 591; Dennison v. Leech, 9 Pa. 164; Ludwick v. Huntzinger, 5 W. & S. 51; Beeson v. Brownfield, 1 Penny. 468; 2 Taylor, Ev., 8th. Eng. ed. § 1416; Cavendish v. Troy, 41 Vt. 99; Blattenberger v. Holman, 103 Pa. 555.

OPINION BY MR. JUSTICE WILLIAMS, October 2, 1893:

We find no substantial error in the action of the court below in opening the judgment in this case, and directing an issue to determine the right of the plaintiff to recover upon the note on which the judgment was entered.   Three questions were raised

on the rule to open judgment, and were to be determined by the issue. It would be better practice, and tend to a more intelligent determination of the issue in such cases, if the questions to be decided by the jury were incorporated into the order and required to be answered separately by the jury in their verdict. In this case it would have required an addition to the order made, as follows : " The questions to be decided by the jury are three in number, viz.: Was the note in controversy given for a good and valid consideration ? Was the purchase of the note by Thompson induced by the acts or declarations of the makers or either of them ? Was the note altered as alleged in defendant's affidavit after its execution and without the consent of the makers ? " If the jury had answered the first and second of these questions in the negative, the plaintiff would have no right to recover, regardless of the answer given to the third question. The court below would in such case have known exactly the conclusions reached by the jury, and upon appeal to this court there would be no uncertainty as to the character or extent of the verdict. The omission so to frame interrogatories is not error, but we respectfully call attention to what we consider the correct practice in these cases, and express our confident hope that the common pleas judges throughout the commonwealth will adopt it. In this case the verdict may have been rendered because of a finding for the defendants on the first and second questions regardless of the third ; or it may have resulted from a finding for the defendants on the third question regardless of the first and second ; or again, it may be that the jury found for the defendants upon all of the questions. The evidence was abundant to justify the jury in finding for the defendants on the first question ; and while portions of the depositions taken in the county where the land was alleged to lie may be incompetent, the general purpose of the evidence to show that the lands had no real existence was a proper one. The portions of the evidence that might properly have been excluded were not brought to the attention of the learned judge by specific objections, and as portions of each deposition were competent their admission over a general objection was not error. If the jury found therefore that the note was obtained by false representations and was in fact without consideration as between the makers and payee, there was competent evidence

before them from which the conclusion might well have been drawn.   The written declaration of Martin as to the consideration of the note and the location and quality of the lands was clearly competent.   It was intended by the parties to be an independent contemporaneous statement, explanatory of the transaction, and was not merged or intended to be in the deed which was delivered at the same time.

The second question was a much closer one.   Whether the purchase of the note by Thompson was induced by the acts or declarations of the makers depended largely on the testimony of the parties.   They were before the jury.   Their credibility was for the jury.   There was evidence which if believed would have justified a verdict either way.   It was fairly submitted by the learned judge, and while the charge is not as full in its statement to the jury of the position of Thompson as presented by his own testimony as we would have made it, we are not prepared to say that it is so inadequate as to require the reversal of the judgment.   The jury saw and heard the witnesses, and they evidently believed that the purchase was not induced by any act or statement of the makers of the note or either of them.   If the learned judge of the court below had been dissatisfied with the finding he would unquestionably have set aside the verdict which, undisturbed, we must regard as a correct determination of the question.

The third question seems to have been hotly contested in the court below, so hotly as to have led to unpleasant consequences affecting the very reputable gentlemen of the bar engaged in the trial.   Indeed our attention was called during the argument in this court to the fact that an action for libel is pending for words spoken by counsel acting on behalf of his client during the trial in the court below.   This is however not the time nor place for us to speak of the privileges of an advocate or to define its extent, and we advert to the subject only because it was brought to our attention with much earnestness at the argument.   We see no error in the admission of the evidence upon this question.   Whether the alteration was patent was one of the questions for the jury.   For what purpose and by whom it was made, as between the makers and the holder, depended upon the conclusions the jury might draw from the evidence. We conclude, after an examination of the whole case, that

484        MARTIN, Appellant, *v.* KLINE et al.

whether the verdict rested on a negative answer to the first and second questions regardless of the third, or upon an affirmative answer to the third question regardless of the first and second, there was in either case evidence before the jury competent in character and sufficient in quantity, if credited by them, to sustain the verdict. This is equally true, if, as it may be, the jury found for the defendants upon all three of the questions involved.

The judgment is therefore affirmed.