# Commonwealth v. Williams, Appellant.

*Criminal law — Perjury — Improper remarks of district attorney—Record of magistrate—Withdrawal of juror.*

1. On the trial of an indictment for perjury for swearing falsely before a magistrate, as the record of the magistrate is admissible as inducement though not to prove the falsity of the prisoner's testimony, it is not reversible error for the trial judge to refuse to withdraw a juror because the district attorney stated in his opening that he would prove that the magistrate dismissed the proceeding.

2. In such a case a remark made by the district attorney in the presence of the jury that the prisoner's turn had come to go to jail, is highly objectionable, but the refusal of the trial judge to withdraw a juror because of the remark is not ground for reversing the judgment, if it ap-

pears that the trial judge condemned the remark as soon as it was made.

*Criminal law—Perjury—Evidence—Cross-examination.*

3. On the trial of an indictment for perjury where the prisoner has been properly cross-examined as to matters developed in her examination in chief, it is reversible error for the trial court to permit the district attorney to continue the cross-examination so as to inject into the case wholly foreign and irrelevant matter, manifestly tending to mislead the jury to the prisoner's prejudice. Thus where the prisoner had been properly cross-examined as to a part that she had taken in a criminal prosecution of certain persons, it is error to permit the district attorney, on further cross-examination to ask the prisoner whether the judge at the trial of the other case had not characterized her as an abandoned, depraved and untruthful woman.

*Criminal law—Perjury—Stenographer's notes—Exception to testimony.*

4. On the trial of an indictment for perjury it appeared that a stenographer took stenographic notes of the testimony of the prisoner before a magistrate, on which testimony the charge of perjury was based. The stenographer testified that he had dictated his notes to a typewriter, and subsequently destroyed them as they were not official. He testified that the transcript was correct, and the district attorney offered it in evidence. The prisoner's counsel objected that the notes and transcript had not been properly compared, and that the witness had no knowledge outside the notes. The court overruled the objection and the prisoner excepted. The transcript was then read to the jury without any further objection or exception being taken. *Held*, on appeal, that the prisoner could not assign as error various portions of the cross-examination included in the transcript, and as to which no exception had been taken.

5. Such a case is a proper one for the application of the general rule, that when a party opposing the admission of evidence enumerates his objections, all that are not enumerated are waived.

*Appeals—Paper-books—Evidence.*

6. An order of court permitting an appellant to print in her paperbook only such portions of the transcript of testimony as in the judgment of her counsel are material in the consideration of the exceptions and the assignments of error, does not relieve her from the duty of printing such portions of the testimony as manifestly are absolutely essential in such consideration.

7. Thus where the appellant alleges as error the refusal of the admission of the notes of testimony of a witness given in a prior judicial proceeding, she is bound to print in her paper-book the preliminary proof that at the time of the trial the witness was beyond the jurisdic-

tion of the court, or for other reasons could not be produced. If she fails to print such proof her assignments of error to the action of the court in this particular, will be dismissed.

*Criminal law—Perjury—Evidence—Letters.*

8. Where on the trial of an indictment for perjury the prisoner exhibits for the purpose of identification of a witness, certain letters purporting to bear the signature of the witness, and before they are offered in evidence the court impounds them at the request of the district attorney, so that they may be examined by the commonwealth's expert, such action of the court is not ground for reversal if it appears that it was the intention of the prisoner to offer the letters in evidence at the proper time, and that she actually did so. The action of the court was in no way harmful to the prisoner's case.

*Criminal law—Perjury—Evidence—Convictions for other crime—Cross-examination.*

9. Where a prisoner takes the stand on his own behalf he may be asked on cross-examination, in order to test his credibility, whether he had not been convicted and sent to prison for other criminal offenses.

10. The limits of cross-examination of a defendant in a criminal case who offers himself as a witness are largely within the discretion of the trial judge, and unless that discretion is so abused that substantial injury has resulted to the accused, the judgment will not be reversed.

Argued Oct. 4, 1909. Appeal, No. 117, Oct. T., 1909, by defendant, from judgment of Q. S. Phila. Co., June T., 1907, No. 524, on verdict of guilty in case of Commonwealth v. Helen Williams, alias Helen V. Abrams. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment for perjury. Before CARR, J.

At the trial it appeared that the defendant was indicted for perjury in swearing before Magistrate EISENBROWN in the case of Commonwealth v. Samuel Abrams charged with desertion and nonsupport, that she was married to him on September 4, 1906, by the Rev. George Lewis Wolfe at Wilmington, Delaware, and also for perjury in then and there swearing that a certain man then and there produced was not Elwood Williams, her first husband.

The assistant district attorney in his opening made the

following remark: "I will show you that the magistrate dismissed the proceedings wherein she (the defendant) had Abrams arrested for desertion."

The defendant asked that a juror be withdrawn. Motion overruled. Exception. [1]

When the prisoner was on the stand she was asked this question:

"Q. You came out of prison in 1901?"

Mr. Waln: I admit she was in prison.

"A. It is everbody's turn to get there."

Mr. Gray: Your turn is coming now.

Mr. Waln: I object to that remark of the district attorney and I ask for the withdrawal of a juror. I except to the remark.

The Court: I will grant you the exception.

Mr. Waln: Your honor will not withdraw a juror?

The Court: No; it was an improper remark and should not have come now. I grant you an exception. [2]

"Q. Do you recall him (Judge PENNYPACKER) saying this to the jury, 'This case has been a marvelous exhibition ——' "

Objected to. Objection overruled. Exception noted for defendant by direction of the court.

"Q. Do you remember him saying this to the jury: 'This case (Commonwealth v. Bass & O'Neill) has been a marvelous exhibition of wickedness and depravity and falsity, but, fortunately for you and for the cause of justice, the questions which arise here are very simple.

" 'The prosecutrix here (the defendant herein) is an abandoned, depraved and untruthful woman. She was living apart from her husband. She was living in a house with the husband of another woman. The house was being used for an unlawful business, by means of which disappointed and unhappy women were deceived into expending their money. She presented the man who was living with her as her husband and she did it so formally as to make that presentation in the shape of sworn papers filed in a case in court, and when she came upon this stand she did not hesitate to deny that this was what she had done. When she discharged from that

house the man who had been living upon her bounty for years, they (the defendants) did not hesitate, as his friends, to go to her to persuade her to take him back upon the same terms.' "

The Witness: When did you have that printed?

Objected to by defendant's counsel.

The Witness: I don't know where it ever came from.

Mr. Gray: I will tell you where it came from. It came from one of the papers of March 1, 1900.

Mr. Waln: I object to the question. Objection overruled. Exception noted for defendant by direction of the court. [3]

The Court: This witness is entitled, if she remembers, to say what was said at that trial. The question is whether you remember or do not remember what the judge did say.

Mr. Gray: "Q. I show you the record, February 28, 1900, 'Verdict of not guilty as to Bass & O'Neill.' State whether or not that verdict was not rendered under the instructions from Judge PENNYPACKER, when he instructed them, as I have read, that you were not to be believed under any circumstances and a verdict of not guilty should be rendered.

Objected to. Objection overruled. Exception noted for defendant by direction of the court. [4]

Magistrate EISENBROWN was asked this question:

"Q. That was the reason you discharged the defendant, because she was a nonresident, and so stated at that time, didn't you?"

Objected to. Objection sustained. Exception noted for defendant by direction of the court. [5]

The stenographer, Mr. Clift, was asked this question:

"Q. Answer the first question I put to you by reading it off."

Mr. Waln: I object. Objection overruled. Exception noted for defendant by direction of the court. [6-17]

The Court: (Magistrate EISENBROWN.)

"Q. Did you have him (Prader) arrested? A. With this man's consent. No, he was not arrested. He came down to the magistrate with him. Before the child was born, that I have denied to protect this man, and that I will bring doctors

in the house that will prove he is my child, and I am willing to serve twenty years' imprisonment for denying it to save the man I have saved for twenty years. After his wife Fannie Abrahams came to the house and said she was going to have me arrested for fornication and bastardy, him and me together, he came on his knees to me and said, 'The only way you can save me is I have a friend in the same club I am in. He will come and say he is the man who is putting up for you and you are after him for support. Will you come down to a friend of mine by the name of Scott. He will send you there. He has the case now. You go down and meet him. There is $50.00. You give it to Prader and he will give it back to you and say you will settle for him, sign your name, and I will show my wife. You will save me for everything. For God's sake will you do it?' I hesitated a long time. At last I did it. Q. You brought suit against the traction company once, did you not? A. I certainly did. Q. Charles Williams brought suit as your husband at the time? A. Never to my knowledge. Q. You swore to the statement of claim in that case, did you not? A. I certainly did swear to a statement of claim that I was injured. Q. And that this man was your husband? A. Never. I was lying sometimes unconscious and not able to speak and had hemorrhages. I never swore to any such thing. Q. Do you remember going before Judge FINLETTER in 1888 and testifying that your son Alfred was Roach's son? A. No, sir. Q. Did you not plead guilty on March 4, 1902, to a bill of indictment, No. 837, September Sessions, 1901, charging you with keeping a disorderly house and keeping a bawdy house? A. Never. I will sue you for everything you are worth in the world. Q. Were you charged, February Sessions, 1900, No. 131, as Helen Williams, alias Madam June, with fortune telling? A. No, I was not. They indicted me certainly, but not that I ever was Madam June. They said I told fortunes. That is the traction company, yes. Q. Please read that transcript and say whether that is the testimony taken ——"

The Court: Read it aloud?

Mr. Waln: Yes.

Objected to by the district attorney. Objection sustained. Exception for defendant noted by direction of the court. [18]

"A. He did testify on the subject of the identity. Q. State whether or not he identified a person then present as the man he married on September 4, 1906, to this defendant in Wilmington, Delaware."

Objected to by the district attorney. Objection sustained. Exception for defendant noted by direction of the court. [19]

Mr. Waln: I want to make a formal offer of the typewritten notes.

The Court: Identified by the witness?

Mr. Waln: Yes, of the testimony of Rev. George Louis Wolfe, pages 69 to 80, inclusive.

Objected to by the district attorney. Objection sustained. Exception for defendant noted by direction of the court. [20]

The learned judge erred in sustaining the commonwealth's objection to the following question by defendant:

Mr. Waln: I also ask the witness if he cannot, by reading these notes and refreshing his memory from these notes, state exactly what the testimony of George Louis Wolfe was on examination in chief and cross-examination, after he was sworn in that case of Commonwealth against Abrams, before Magistrate Eisenbrown.

Objected to by the district attorney. Objection sustained. Exception for defendant noted by direction of the court. [21]

Certain letters of Samuel Abrams were presented by defendant.

The district attorney: Inasmuch as this is a matter of some importance, I ask that the paper, the signature to which the witness has identified as his, and the paper as to which he says the signature is not his, be impounded by the court, in order that the commonwealth's expert may examine them to-night.

The Court: Is there any objection to that?

Mr. Waln: I do not want them to go out of my possession. I will show them to any expert in the world. They are not

offered in evidence.   They will be offered in evidence at the proper time.

The request of the district attorney that the letters be impounded is granted by the court.

An exception for defendant to this ruling of the court is noted by direction of the court. [22]

The prisoner on the stand:

"Q. Were you not tried on May 24, 1900, under the name of Helen Williams, alias Madam Drayton, charged with fortune telling, convicted and sentenced to one year in the county prison, which you duly served?"

Mr. Waln: I object.   Objection overruled.   Exception noted for defendant by direction of the court. [23]

"Q. Is it not a fact that you were, under the name of Helen Williams, arrested and convicted under a bill of indictment of September Sessions, 1901, No. 837, on which you were tried on April 4, 1902, for keeping a disorderly house?   A. Your honor, I beg you to make Gray prove it. I beg you to make him prove the house that I lived in."

Mr. Waln: I object to the question.   Objection overruled. Exception noted for defendant by direction of the court. [24]

Verdict of guilty, upon which the defendant was sentenced to two years' imprisonment.

*Errors assigned* among others were (1–33) rulings on evidence, quoting the bill of exceptions, either set forth above, or stated in the opinion of the Superior Court.

*S. Morris Waln*, with him *Joseph W. Shannon, William B. Crawford* and *John W. Wescott*, for appellant.—The district attorney had no right to express his opinion to the jury that defendant was guilty or that she was "going to jail now:" Com. v. Bubnis, 197 Pa. 550; Com. v. Nicely, 130 Pa. 261.

The district attorney had no right to state to the jury that the issue before them had been decided by the magistrate adversely to the defendant: Hyslop v. Crozier, 1 Miles, 267; Fisher v. Penna. Co., 34 Pa. Superior Ct. 500; Holden v. Penna. R. R. Co., 169 Pa. 1; Wagner v. Hazle Twp., 215 Pa. 219.

The remarks of the district attorney as to a charge in another case was of irreparable injury to appellant: Butler v. Slam, 50 Pa. 456; Wagner v. Hazle Twp., 215 Pa. 219.

The testimony of an absent or deceased witness given at a former trial between the same parties touching the same subject-matter is admissible: Com. v. Cleary, 148 Pa. 26; Com. v. Keck, 148 Pa. 639; United States v. Macomb, 5 McLean, 286; Summons v. Ohio, 5 Ohio St. 325; Rhine v. Robinson, 27 Pa. 30; P. & R. R. R. Co. v. Spearen, 47 Pa. 300.

*William A. Gray,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.

OPINION BY RICE, P. J., December 13, 1909:

The defendant was indicted for perjury in swearing before a magistrate of Philadelphia, in the case of Commonwealth v. Samuel Abrams, charged by her with desertion and nonsupport, first, that she was married to Abrams on September 4, 1906, by the Rev. George Lewis Wolfe at Wilmington, Delaware, second, that a certain man then and there produced was not Ellwood Wilson, her first husband.

As the record of that proceeding was admissible as inducement, though not to prove the falsity of the testimony assigned as perjury, it is not apparent that there was reversible error in refusing to withdraw a juror because the assistant district attorney stated in his opening that he would prove that the magistrate dismissed the proceeding. The case differs substantially from Fisher v. Penna. Co., 34 Pa. Superior Ct. 500, for there the objectionable remark of counsel related to action of the magistrate that could not be proved for any purpose. Of course, the record could not be used legitimately for the purpose of showing the opinion of the magistrate as to the truthfulness of the testimony in order to influence their judgment upon that question, but it does not satisfactorily appear that it was permitted to be used for that purpose. Therefore, the first and fifth assignments are overruled.

The remark of the assistant district attorney, made in the presence of the jury, to the defendant when under cross-examination, to the effect that her turn to go to jail had come,

was highly objectionable for more than one reason and he frankly admits that it ought not to have been made. It was an invasion of that right which every witness has when testifying to protection against degrading or humiliating accusations directly made by the cross-examiner. The remarks of ROGERS, J., in Morss v. Palmer, 15 Pa. 51, and of PAXSON, J., in Buck v. Com., 107 Pa. 486, relating to the right of witnesses to such protection, are pertinent. Moreover, it is proper to say in this connection, as was said in Com. v. Bubnis, 197 Pa. 550, that " in his official capacity, clothed with the greatest responsibilities, and exercising functions in a measure judicial, the district attorney should ever be cautious in expressing to a jury his belief in the guilt of the accused." See also Com. v. Swartz, 37 Pa. Superior Ct. 507. If that is ever permissible or excusable, it is not so when the accused is under cross-examination. If the trial judge had seen fit to withdraw a juror because of the remark, the commonwealth would have had no just cause to complain. We cannot say, however, that his immediate condemnation of the remark was not sufficient to counteract any prejudicial effect it might have had otherwise, and therefore the second assignment is overruled. See Cook v. Erie Electric Motor Company, 225 Pa. 91.

The defendant was cross-examined as to a criminal case or cases she had instituted against persons named Bass and O'Neil, and several questions were asked her as to the testimony she had given in those cases and as to the statements she had made to the assistant district attorney at the time of the trial. The evident purpose of this cross-examination was to lay ground for contradicting her testimony in the present case by the testimony she had given and the statements she had made in the trial of the cases she had referred to. After having been cross-examined at some length as to these matters, she was interrogated as to her recollection as to what happened at the trial, and replied that in some things her recollection was good but that she could not recollect everything. Thus far there is no objection raised to the cross-examination. But then, she having been interrogated as to who presided at the trial and having stated that it was Judge PENNYPACKER, the

assistant district attorney was permitted under objection and exception to put the following question to her, reading from a newspaper clipping: "Do you remember him saying this to the jury: 'This case has been a marvelous exhibition of wickedness and depravity and falsity, but, fortunately, for you and for the cause of justice, the questions which arise here are very simple. The prosecutrix here is an abandoned, depraved and untruthful woman. She was living apart from her husband. She was living in a house with the husband of another woman. The house was being used for an unlawful business, by means of which disappointed and unhappy women were deceived into expending their money. She presented the man who was living with her as her husband and she did it so formally as to make that presentation in the shape of sworn papers filed in a case in court, and when she came upon this stand she did not hesitate to deny that this was what she had done. When she discharged from that house the man who had been living upon her bounty for years, they (the defendants) did not hesitate, as his friends, to go to her to persuade her to take him back upon the same terms.'" This was not legitimate cross-examination. The door was not opened for its admission by anything that she had testified to in chief. This being so, what could have been more irrelevant and more prejudicial to the defendant than to prove or compel her to admit that in the trial of another case she had been characterized by the eminent presiding judge as an abandoned, depraved and untruthful woman. But it may be said that as she did not admit that she had been so characterized, no harm was done. This is not a satisfactory answer to the assignment. Ordinarily, it is true, it is not sufficient to show that an improper question, either in form or in substance, has been put to a witness, or that an offer of irrelevant evidence has been made in the hearing of the jury; it must appear that the answer given to the question or the evidence received under the offer tended to prejudice the appellant's case. This is the general rule, but it is not so fixed and unvarying as to prevent the appellant from assigning for error and the appellate court from reviewing a ruling against his objection and exception whereby

wholly foreign and irrelevant matter, manifestly tending to mislead the jury to his prejudice, was got before them under the guise of cross-examination or an offer of evidence. In the recent case of Wagner v. Hazle Township, 215 Pa. 219, an offer of testimony was made with the intention to bring before the jury an irrelevant fact. In reversing the judgment Justice MESTREZAT said: "When an attorney in the trial of a cause willfully and intentionally makes an offer of wholly irrelevant and incompetent evidence, or makes improper statements as to the facts in his address to the jury, clearly unsupported by any evidence, which are prejudicial and harmful to the opposite party, it is the plain duty of the trial judge, of his own motion, to act promptly and effectively by reprimanding counsel and withdrawing a juror and continuing the cause at the costs of the client. In no other way can justice be administered and the rights of the injured party be protected." This ruling was followed and applied. in Saxton v. Pittsburg Railways Co., 219 Pa. 492, and the principle is applicable here. As plainly as actions could, the assistant district attorney conveyed the impression that he was reading, no doubt correctly, from the charge of Judge PENNYPACKER in the case of Com. v. Bass and O'Neil. This is brought out very clearly in the fourth assignment of error, wherein it appears that under objection and exception he was permitted to ask the following question: "I show you the record, February 28th, 1900, 'Verdict of not guilty as to Bass and O'Neil.' State whether or not that verdict was not rendered under the instructions from Judge PENNYPACKER, when he instructed them, as I have read, that you were not to be believed under any circumstances and a verdict of not guilty should be rendered." The harm was done as soon as the questions were asked with the sanction of the court. The prejudicial error consists in this, not that the counsel did not read correctly from the charge in the Bass and O'Neil case, but that the commonwealth was permitted by this mode of cross-examination to bring before the jury in an indirect way the animadversions on the defendant's character and conduct made by another judge in his charge to the jury in another case. The error is

not technical but substantial, and requires a reversal of the judgment. The third and fourth assignments are sustained.

Under assignments six to seventeen, inclusive, the appellant's counsel argues the question of the admissibility, in the presentation of the commonwealth's case in chief, of certain portions of the testimony given by the appellant when under cross-examination at the hearing before the magistrate of the desertion and nonsupport proceeding against Abrams. Neither the disconnected extracts from the official report of the trial printed in the appellant's paper-book nor the record sent up to this court, shows that this specific question was distinctly raised in the court below. Going to the original record, we find that one of the court stenographers was present at the hearing before the magistrate and took stenographically the testimony the appellant gave at that hearing; that he had his stenographic notes transcribed by typewriting in longhand, he dictating to the typewriter from his notes and carefully comparing them with the copy; that some months afterwards he destroyed his stenographic notes, they not having been taken officially; and that he was able to testify and did testify, having the typewritten transcript of the testimony before him, as follows: "Q. Does the testimony that you have identified represent actually what she swore to under oath and all that she swore to? Q. The words that came from her mouth? A. Yes, sir." He further testified that independently of his transcribed notes, he had a recollection of some of the matters testified to but not as to all. Having laid these grounds, the assistant district attorney proposed, for the purpose of saving time, that the transcript be admitted and incorporated in the official report of the trial, without reading it at length, as the witness's answer to this question: "Will you kindly tell me, refreshing your recollection by the notes of testimony that you took and transcribed, what this woman swore to at the hearing?" At first this was assented to by the defendant's counsel, but after some further cross-examination he withdrew his assent and objected upon the ground that the notes and the transcript had not been properly compared and that the witness had no knowledge outside the notes. Thereupon,

the assistant district attorney renewed his question and directed the witness to answer by reading from the transcript. To this the defendant objected without giving any other reasons than those above mentioned. The court overruled the objection, and the defendant excepted. This is the only exception taken to the ruling permitting the witness to testify in the manner he did. No exception was taken, and no objection was raised when he came to the testimony given on cross-examination. The trial judge was warranted in assuming that the defendant raised no specific objection to that part of the testimony which would not apply to the whole of the testimony. In short, the objections that were made were not valid, and the objection now urged was not raised at the proper time, namely, when the particular parts of the cross-examination assigned for error were read. It is a proper case. for the application of the general rule that when a party, opposing the admission of evidence, enumerates his objections, all that are not enumerated are waived: Lovett v. Mathews, 24 Pa. 330; Messmore v. Morrison, 172 Pa. 300; Danley v. Danley, 179 Pa. 170; O'Toole v. Post Printing, etc., Co., 179 Pa. 271; Gorman v. Bigler, 8 Pa. Superior Ct. 440; United Fruit Co. v. Bisese, 25 Pa. Superior Ct. 170. The case is very much like the offer of a deposition, concerning which it has been frequently held. that if any part of the deposition is legal evidence, the party opposing its admission ought to point out the objectionable parts so that the other party may withdraw them or the court may exclude them, and that if he does not point them out the admission of the deposition over a general objection is not reversible error: Anderson v. Neff, 11 S. & R. 208; Martin v. Kline, 157 Pa. 473. These, like other general rules, may be liable to exceptions. There may be cases where the matter objected to will be so directly and manifestly opposed to every principle of justice that the waiver of particular objections would not be implied, Anderson v. Porter, supra, but this is not such a case. In addition to the foregoing reasons, it should be stated that the assignments of error one to seventeen do not conform to our rules. They are all overruled.

In order to prove the testimony a witness gave in the hearing before the magistrate of the case of Com. v. Abrams, there should have been preliminary proof that he was beyond the jurisdiction of the court or for other reasons could not be produced. It is stated, in appellant's brief of argument, that such preliminary proof was given, but it is not printed in connection with the assignments eighteen to twenty-one, or anywhere else in the paper-book. The order of court, permitting the appellant to print in her paper-book only such portions of the transcript of testimony as in the judgment of her counsel were material in the consideration of the exceptions and the assignments of error, did not relieve her from the duty of printing such portions of the testimony as manifestly were absolutely essential in such consideration. There is no room for difference of opinion upon the proposition that in determining the question whether there was reversible error in the rulings complained of in these four assignments, it is absolutely essential that the appellate court have before it the preliminary testimony above referred to, and at least the substance of the testimony proposed to be given. It is not supposable that the learned counsel for the appellant judged otherwise. We therefore dismiss these assignments without discussing the question argued by counsel.

In the twenty-second assignment complaint is made of the following action of the court: The defendant's counsel, for the purpose of identification, exhibited to Abrams, when under cross-examination, certain letters purporting to bear his signature, and before they had been offered in evidence, the court, at the request of the assistant district attorney and against the protest and objection of the defendant's counsel, impounded them in order that the commonwealth's expert might examine them. Whether or not this action of the court before the letters had been offered in evidence was strictly regular, particularly in view of the offer of the defendant's counsel to show them to any expert and his undertaking to offer them in evidence at the proper time, need not be discussed. Be that as it may, it has not been made clear that the action was harmful to the defendant's case. It was not as if the

commonwealth had obtained the letters in this mode and then offered them in evidence against her. It was her intention to offer them in evidence at the proper time, and she did so. The suggestion that the constitutional right of the defendant not to be required to give evidence against herself, is without foundation. The assignment is overruled.

In the recent case of Com. v. Racco, 225 Pa. 113, it was held that where the accused takes the stand on his own behalf, he may be asked on cross-examination, in order to test his credibility, whether he had not been convicted and sent to prison for other criminal offenses; and if he answers no, it may be shown by other witnesses, for the purpose of contradicting him and impeaching his credibility, that he had made declarations to the effect that he had been convicted and sentenced for such crimes. In the same case the court said: "In Buck v. Com., 107 Pa. 486, the question asked the witness was held to have been improper because if he had been convicted of embezzlement, the proper evidence of that fact was the printed record. We do not now approve what was there said, and, if it is to be regarded as an expression of the law, it is overruled." It follows that there was no error in permitting the defendant to be asked on cross-examination as to her prior conviction of other criminal offenses. The twenty-third and twenty-fourth assignments are overruled.

It is not easy to see how the mere prior arrest of a witness upon a criminal charge can affect his credibility; and in Stout v. Rassel, 2 Yeates, 334, it was held that the credit of the witness is not to be impeached by charges of particular offenses of which he has not been convicted. The questions put to the defendant upon cross-examination, which are quoted in the twenty-seventh, twenty-eight, twenty-ninth and thirty-second assignments, were all doubtful of propriety, but as it does not appear that any evidence was adduced in answer thereto which was prejudicial to her, the assignments are not sustained.

The limits of cross-examination of a defendant, in a criminal case, who offers himself as a witness are largely within the discretion of the trial judge, and unless that discretion was so

abused that substantial injury has resulted to the accused, the judgment will not be reversed: Com. v. Racco, supra. As already pointed out, we are of opinion that the limits of proper cross-examination were transgressed to the injury of the defendant in the matters complained of in the third and fourth assignments, but viewing in the light of the above principle the questions propounded to the defendant, which are quoted in the twenty-fifth, twenty-sixth, thirtieth, thirty-first and thirty-third assignments, we cannot say that there was reversible error in overruling the objections.

It is admitted that the learned judge was mistaken in saying in that portion of his charge, which is the subject of the thirty-fourth assignment, that the statement in the action against the traction company was sworn to, but the error was probably cured by the remark of the assistant district attorney to the learned trial judge in the presence of the jury with regard to that matter. If the instructions in the first part of this assignment of error were all that had been given, they would have had a tendency to mislead as to the true nature of the issue, the burden of proof and the quality of proof required of the commonwealth. But taken in connection with other portions of the charge, we cannot say that they were misleading.

The remaining assignments of error do not require particular discussion. We are of opinion that the answers of the learned judge to the question propounded by the jury, and to the first and eighth points presented by the defendant's counsel, were proper.

The judgment is reversed, and venire facias de novo awarded.