# Commonwealth *v.* Vardelle, Appellant.

*Criminal law — Assault and battery — Evidence as to another crime.*

To make one criminal act evidence of another, some connection must exist between them; that connection must be traced in the general design, purpose or plan of the defendant, or it may be shown by such circumstances of identification as necessarily tends to establish that the person who committed one must have been guilty of the other. The collateral or extraneous offense must form a link in the chain of circumstances or proofs relied upon for conviction; an isolated or disconnected fact it is of no consequence. A defendant cannot be convicted of the offense charged simply because he is guilty of another offense.

On the trial of an indictment against a woman for an aggravated assault and battery in shooting a man, it is reversible error to permit the man who was shot to testify that during a period of time which had ceased some weeks, or months before the shooting, he had lived on terms of criminal intimacy with the defendant, where there is no other evidence in the case that proof of the alleged earlier offense was of any aid in determining the guilt or innocence of the defendant of the offense charged in the indictment.

*Criminal law—Cross-examination of defendant—Act of March 15, 1911, P. L. 20.*

On the trial of an indictment of a woman for aggravated assault and battery in shooting a man, the defendant cannot under the Act of March 15, 1911, P. L. 20, be asked on cross-examination whether she had had criminal relations with the man whom she shot, if there is nothing in her testimony-in-chief that brought her within either of the classes of those who are denied the protection of that act.

Argued April 18, 1918.   Appeal, No. 96, April T., 1918, by defendant, from judgment of Q. S. Jefferson Co., Nov. Sessions, 1917, No. 11, on verdict of guilty in case of Commonwealth v. Agnes Vardelle.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Indictment for felonious shooting and for aggravated assault and battery.   Before CORBET, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on the second count on which judgment of sentence was passed.

*Errors assigned* were rulings on evidence as above.

*William L. McCracken,* with him *William M. Fairman,* for appellant.—The principle is well established that evidence is not admissible, in a criminal prosecution of the perpetration by the defendant of a crime other than that for which he is on trial: Com. v. House, 223 Pa. 487; Snyder v. Com., 85 Pa. 519; Goersen v. Com., 99 Pa. 388; Swan v. Com., 104 Pa. 218; Com. v. Haines, 257 Pa. 289.

In support of our second assignment of error, we contend that the matter complained of is in direct violation of the Act of the General Assembly of Pennsylvania approved the 15th day of March, 1911, P. L. 20.

*Jesse C. Long,* with him *Charles J. Margiotti,* for appellee.—The rule in substance is that where facts and circumstances amount to proof of another crime than that charged and there is ground to believe that the crime charged grew out of it or was in any way connected with it, such facts and circumstances may be used to show the quo animo of the accused: Com. v. Ferrigan, 44 Pa. 386; Shaffner v. Com., 72 Pa. 60; Kramer v. Com., 87 Pa. 299; Kilrow v. Com., 89 Pa. 480.

It may be to prove motive: Com. v. Pipes, 148 Pa. 25; Com. v. Johnson, 133 Pa. 293; Com. v. Bell, 166 Pa. 405.

Proof of distinct crime may be offered for the specific purpose of evidencing design, plan, motive, intent or other relevant facts: Com. v. Shields, 50 Pa. Superior Ct. 1; Hester v. Com., 85 Pa. 139; Com. v. Andrews, 234 Pa. 597.

It is most earnestly contended that there was no violation of either the letter or the spirit of the Act of March 15, 1911, P. L. 20; Com. v. Melinkoff, 61 Pa. Superior Ct. 238; Com. v. Garanchoskie, 251 Pa. 247.

OPINION BY HEAD, J., July 10, 1918:

The defendant was tried on an indictment containing two counts. The first count charged a felonious shooting by her and the second an aggravated assault and battery. The jury found her guilty on the second count with a recommendation to the mercy of the court. From the sentence following that verdict this appeal was taken. As to many of the material facts surrounding the occurrence, which resulted in the wounding of the commonwealth's chief witness, the testimony is wholly irreconcilable and much of it appears to be almost, if not entirely, incredible. Some facts, however, of considerable importance, are practically conceded.

The defendant was a young woman about nineteen years of age. She lived with her husband. She was the mother of a child living and something less than two years of age. Her young sister was either residing with her or visiting her at the time of the unfortunate occurrence out of which this prosecution resulted. The shooting occurred in the house and home of the defendant in the absence of her husband. The defendant at that time was on the threshold of the most serious mental and physical disturbance that must be gone through by female human beings. Within forty-eight hours after the shooting the fulness of her days had been accomplished and she gave birth to a normally developed child. The

witness, who was shot, had been, some considerable time before, boarding and lodging in her husband's household. For reasons satisfactory to the husband that relation had been broken off and the witness had been directed to go away and take his personal effects with him.    Now it is clear that on the morning of the shooting he visited her house and found her alone, as she says, awaiting the coming event then so clearly foreshadowed.    Why did he come?    She, admitting the shooting, declares that her action in securing her husband's revolver and using it was necessary to protect not only herself but the life of her child so soon to be born from a criminal assault by the witness.    Surely, if her story be credible, the law would afford her ample protection in resisting, by every means within her power and every weapon within her grasp, such an assault.    The commonwealth's witness accounts for his presence in her house on that morning by the statement she had sent for him and desired to speak with him on a matter important to both of them.

In the course of the Commonwealth's case in chief the learned trial judge, over the objection of the defendant's counsel, permitted this witness to testify that during a period of time which, however, had ceased some weeks or months before the shooting, he had lived on terms of criminal intimacy with the defendant.    The result of this was to practically force her to trial upon a charge of adultery of which the indictment gave her no warning. Where the Commonwealth may, with propriety, produce evidence tending to prove the commission of an offense not charged in the bill of indictment, is certainly the exception and not the rule.    To render such testimony competent there must be some apparent visible causal relation between the earlier and different offense to which the evidence goes and the offense upon which the defendant is being tried.    Our books of reports contain many decisions defining the zone within which only can such testimony be properly received.    In Commonwealth v. Haines, 257 Pa. 289, the Supreme Court, speaking

through Mr. Justice MESTREZAT, thus sums up his review of many earlier cases: "To make one criminal act evidence of another, some connection must exist between them; that connection must be traced in the general design, purpose or plan of the defendant, or it may be shown by such circumstances of identification, as necessarily tends to establish that the person who committed one must have been guilty of the other. The collateral or extraneous offense must form a link in the chain of circumstances or proofs relied upon for conviction; as an isolated or disconnected fact it is of no consequence; a defendant cannot be convicted of the offense charged simply because he is guilty of another offense."

Now whatever may have been the relation that had existed in the past between the defendant and the Commonwealth's witness, that relation had been discontinued for a very considerable period of time before the shooting occurred. It seems reasonably plain that even the relation testified to by him could afford neither warrant nor justification for his visit to the lonely and unprotected wife of another man. Even if we assume there had existed a criminal intimacy between these parties, as he testifies, where are we to look for the sequential relation that ties the two offenses together? The witness does not say that during their interview that subject was even discussed; nor does he declare that she charged him in any way with being the responsible cause of her condition. He furnishes no evidence of any quarrel or exhibition of ill feeling or resentment; indeed he declares they shook hands, said goodbye, and were apparently parting in amity, when the shots came like a bolt from the blue. Such testimony, instead of making plain a motive for the shooting—which the Commonwealth in such a case was in no way bound to prove—rather tended to make more obscure the real cause of the defendant's action. It does not then appear that evidence of the alleged earlier offense was of any aid in determining the guilt or innocence of the defendant of the

offense charged in the indictment.    It did tend to besmirch her character as a chaste woman and doubtless affected, perhaps destroyed her credibility as a witness. But since the passage of the Act of 1911, to which we shall again refer, the doctrine enunciated in Commonwealth v. Racco, 225 Pa. 113, and Commonwealth v. Williams, 41 Pa. Superior Ct. 326, cannot be followed, and the evidence was clearly incompetent for the purpose of affecting the credibility of the witness.    Unless then the Commonwealth can show something more to warrant an inference of a natural reasonable sequence, between the alleged earlier relation and the act for which the defendant was tried, we are of opinion that evidence was incompetent.    The objection made by defendant's counsel should have been sustained and the evidence should have been rejected.    The first specification of error therefore supports a judgment of reversal.

If the second and remaining assignment of error stood alone, it could probably be correctly disposed of by the statement it brings nothing before the appellate court. The testimony complained of appears to have been admitted without objection and no exception was taken which would bring it upon the record for our consideration.    But as the case must go back to be tried again, we think it proper to say that it was altogether beyond the province of the district attorney to cross-examine the defendant, when on the witness stand on her own behalf, as to the matters complained of.    In taking the stand in her own defense, she was protected to a very considerable extent by the provisions of the Act of March 15, 1911, P. L. 20.    There was nothing in her testimony in chief, as we read it, that brought her within either of the classes of those who are denied the protection of that statute: Com. v. Dietrich, 65 Pa. Superior Ct. 599.    In the light of the record, as it is now presented to us, she was therefore deprived of a substantial right and it will be the duty of the court and of the district attorney, upon another trial, to see that such right be not denied to her

unless she place herself outside of the zone of protection created by the statute.

As we have already said, the jury found the defendant guilty only on the second count of the bill of indictment. The learned trial judge and the district attorney must first of all determine what effect that verdict should have on the course of the trial to follow. The question is not before us at this time and anything the opinion writer might say on the subject would be purely obiter.

The judgment is reversed and a venire facias de novo awarded.